# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

SHIRLEY BARNETT                          CASE NO.  3:24-CV-00863

VERSUS                                   JUDGE TERRY A. DOUGHTY

WAL-MART INC., ET AL.                     MAG. JUDGE KAYLA D. MCCLUSKY

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a Motion to Remand [doc. #10] filed by Plaintiff Shirley Barnett.  The motion is opposed.  [doc. #12].  For reasons set forth below, IT IS RECOMMENDED that the Motion to Remand be DENIED.

### Background

Plaintiff Shirley Barnett ("Barnett") filed a Petition against Wal-Mart, Inc. ("Walmart") and Wal-Mart Louisiana, LLC ("Walmart Louisiana"), collectively ("Defendants"), on December 29, 2023, in the Fourth Judicial District Court, Morehouse Parish, Louisiana.  (Petition for Damages [doc. #1-2, p. 1]).  Barnett seeks damages stemming from a trip-and-fall accident at a Walmart store on January 24, 2023.  *Id.*

According to Barnett, she was visiting Walmart on January 24, 2023, when her feet became entangled in a rug, causing her to fall.  *Id.*  Barnett alleges that Walmart employees failed to ensure that the rug was properly maintained.  *Id.* at p. 2.  As a result of the fall, Barnett suffered both physical injuries and mental anguish.  *Id.*

1

Defendants removed the action to this Court on June 27, 2024. (Notice of Removal [doc. #1]). Defendants' basis for removal is diversity jurisdiction. *Id.* at p. 7. Barnett is a resident and citizen of Louisiana. *Id.* at p. 2. Walmart is a Delaware corporation with its principal place of business in Arkansas. *Id.* Walmart Louisiana is a Delaware limited liability company whose sole member is Wal-Mart Stores East, LP, a Delaware limited partnership. *Id.* Wal-Mart Stores East, LP has two partners: (1) WSE Management, LLC, (general partner) and WSE Investment, LLC (limited partner), both of which are Delaware limited liability companies whose sole member is Walmart. *Id.*

Barnett's Petition for Damages, consistent with Louisiana law, did not specify the monetary value of her claims. (Petition for Damages [doc. #1-2, pp. 2-3]). Defendants assert that the face of Barnett's Petition did not suggest the amount in controversy exceeded $75,000. (Notice of Removal [doc. #1, p. 3]). On February 12, 2024, Defendants received Barnett's responses to interrogatories and requests for production of documents, which included medical records indicating that Barnett had incurred approximately $9,000 in medical expenses. *Id.* at p. 4.

On June 7, 2024, Defendants took the deposition of Barnett. *Id.* at p. 5. During the deposition, Barnett disclosed details about her injuries, ongoing treatment, continued pain, and her need for additional medical procedures, including ankle surgery and treatment for her lower back. *Id.* at pp. 5-6. On June 24, 2024, Defendants received the deposition transcript and additional medical records and bills, revealing that Barnett had incurred approximately $25,000 in medical expenses to date, with further expenses expected for her continued treatment and surgery. *Id.* at p. 6. Defendants contend that this information demonstrated, for the first time, that the amount in controversy exceeds $75,000 and that this case was removable. *Id.* at pp. 6-7.

On July 30, 2024, Barnett filed the instant Motion to Remand.  [doc. #10].  Therein, she argues that Defendants failed to timely file their Notice of Removal.  *Id.* at p. 2.  Defendants opposed the motion on August 12, 2024.  [doc. #12].  First, Defendants argue that Barnett misunderstands the timing requirements for removal, stating that removal is permissible within thirty-days of receiving a "paper" that makes the case's removability facially apparent, as long as removal occurs within one year of the filing of the state court petition.  *Id.* at p. 6.  Defendants assert that the June 24, 2024, receipt of Barnett's deposition transcript and updated medical records marked their first notice of the case's removability, making their removal timely.  *Id.* at pp. 9-12.

Defendants also contend that Barnett's motion is untimely.  *Id.* at p. 8.  They argue that the deadline to file the motion was July 29, 2024, and that by filing the motion on July 30, 2024, Barnett waived her right to challenge any procedural defects in the removal.  *Id.* at p. 9.

Barnett did not file a reply.  Accordingly, the matter is ripe.

## Law & Analysis

A defendant may remove an action from state court to federal court, provided the action is one in which the federal court may exercise original jurisdiction.  *Manguno v. Prudential Prop. and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citing 28 U.S.C. § 1441(a)).  The removing defendant bears the burden of establishing federal subject matter jurisdiction and ensuring compliance with the procedural requirements of removal.  *Id.*  Because federal courts are courts of limited jurisdiction, a suit is presumed to lie outside this limited jurisdiction unless and until the party invoking federal jurisdiction establishes to the contrary.  *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001) (citation omitted).

To determine whether jurisdiction is present, courts consider "the claims in the state court

petition as they existed at the time of removal." *Manguno*, 276 F.3d at 723 (citing *Cavallini v. State Farm Mut. Auto. Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995)).  "Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand." *Id.* (citing *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000)).

## I.    The Court Enjoys Subject Matter Jurisdiction

Walmart invoked the court's subject matter jurisdiction via diversity, which requires complete diversity of citizenship between plaintiff and defendants, and an amount in controversy greater than $75,000.  28 U.S.C. § 1332(a).  The parties do not dispute that diversity of citizenship exists.  In order for there to be complete diversity, the parties must be "citizens of different States."  28 U.S.C. § 1332(a)(1).  Barnett is a resident of and domiciled in Louisiana.  (Notice of Removal [doc. #1, p. 2]).  Walmart is a Delaware corporation with its principal place of business in Arkansas. *Id.*  Walmart Louisiana is a limited liability company.  *Id.*  Citizenship for a limited liability company is determined by the citizenship of all of its members.  *MidCap Media Finance, L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310, 314 (5th Cir. 2019).  Walmart Louisiana's sole member is Wal-Mart Stores East, LP, a Delaware limited partnership.  (Notice of Removal [doc. #1, p. 2]).  Wal-Mart Stores East, LP has two partners: (1) WSE Management, LLC (general partner) and WSE Investment, LLC (limited partner), both of which are Delaware limited liability companies whose sole member is Walmart.  *Id.*  Complete diversity of citizenship exists because the plaintiff and defendants are not citizens of the same state.

The parties also do not contest that the amount in controversy is met.   However, parties can never consent to federal subject matter jurisdiction, and lack of such jurisdiction is a defense which cannot be waived.  *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996).  The burden rests with the removing defendant to establish by a preponderance that the amount in controversy is met.

4

*Manguno*, 276 F.3d at 723.  To satisfy the preponderance standard, the removing defendant may support federal jurisdiction "in either of two ways: (1) by demonstrating that it is facially apparent from the petition that the claim likely exceeds $75,000 or (2) by setting forth *the facts* in controversy—preferably in the removal petition, but sometimes by affidavit—that support a finding of the requisite amount."  *Grant v. Chevron Phillips Chem. Co.*, 309 F.3d 864, 868 (5th Cir. 2002) (citations and internal quotation marks omitted).  The test is whether it is more likely than not that the amount of the claim will exceed $75,000.  *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 n.13 (5th Cir. 1998).

Defendants assert in their Notice of Removal that on June 24, 2024, they received medical records and bills demonstrating that Barnett had incurred approximately $25,000 in medical expenses.  [doc. #1, p. 6].  Additionally, Barnett's deposition transcript revealed that she requires ankle surgery to address a shifted rod or plate in her left ankle caused by her fall.  [doc. #12-3, p. 6].  Courts have awarded a range of damages for ankle surgery claims.  *See Dennis v. The Finish Line, Inc.*, 1999-1413 (La. App. 1 Cir. 12/22/00); 781 So. 2d 12, 30 (a young woman sustained serious injuries, including a broken ankle, after a two-car collision; the trial court awarded $75,000 in damages for the ankle injury); *Johnson v. New Orleans Dep't of Streets*, 94-1542 (La. App. 4 Cir. 2/23/95), 650 So. 2d 1216, 1217 (a trial court awarded $25,000 in general damages to a plaintiff who suffered a skinned knee and a twisted ankle after a sidewalk fall); *Gardner v. Acosta Sales*, 03-573 (La. App. 5 Cir. 11/12/03), 861 So. 2d 690, 691 (a guest passenger with a broken ankle and other injuries was awarded $40,077 in medical expenses and general and special damages).  Based on these cases, Barnett could potentially be awarded medical expenses ranging from $50,000 to $100,000.  Further, Barnett testified that she will require further medical treatments on her lower back due to the fall.  (Notice of Removal [doc. #1, pp. 5-6]).

Barnett seeks damages beyond medical expenses. Her itemized damages list includes (1) medical expenses (past, present, and future); (2) physical pain (past, present, and future); (3) mental anguish (past, present, and future); (4) physical impairment (past, present, and future); and (5) inconvenience (past, present, and future). (Petition for Damages [doc. #1-2, pp. 2-3]). Louisiana juries commonly award damages for physical pain and mental anguish in slip-and-fall cases. *See Labarrera v. Boyd Gaming Corp.*, 2013-629 (La. App. 3 Cir. 1/30/14), 132 So. 3d 1018, 1022 (a jury awarded $30,000 for past and future physical pain and suffering and $15,000 for past and future emotional distress to a plaintiff injured in a slip and fall); *Lacy v. ABC Ins. Co.*, 97-1182 (La. App. 4 Cir. 4/1/98), 712 So. 2d 189, 191 (a jury awarded $50,000 for physical pain and suffering to a plaintiff who slipped on a banana and injured her knee); *Brown v. Breaux Bridge Ventures, LLC*, 2017-440 (La. App. 3 Cir. 2/15/18), 239 So. 3d 319, 326 (a jury awarded $25,000 for past and future physical and mental pain and suffering and physical impairment after a plaintiff fell in a casino parking lot and sustained multiple injuries). When taking into account the damages Barnett seeks and the compensation commonly awarded by Louisiana juries, it is evident that the amount in controversy is satisfied.

In summation, the Court concludes that the value of the relief sought by Barnett is well in excess of the jurisdictional threshold for the exercise of diversity jurisdiction. The undersigned finds that Defendants have demonstrated by a preponderance of the evidence that the amount in controversy exceeded $75,000 at the time of removal.

Accordingly, the Court finds that complete diversity of citizenship exists between the parties and that the amount in controversy is met. Thus, the Court enjoys subject matter jurisdiction in this case.

## II.       Timeliness of Remand

Barnett's sole argument in her Motion to Remand is that Walmart was untimely in filing its "Motion to Removal."  (M/Remand [doc. #10, p. 2]).  "A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)."  28 U.S.C. § 1447(c).  "This 30-day limit does not apply, however, to jurisdictional defects . . ."  *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 69 (1996).  The purpose of the thirty-day requirement is to ensure that procedural defects are raised promptly, thereby reducing burdens on the parties and the courts.  *F.D.I.C. v. Loyd*, 955 F.2d 316, 322 (5th Cir. 1992).

As noted above, Barnett did move to remand this case.  However, her motion relied solely on the ground that the notice of removal was not timely filed.

The Notice of Removal was filed on June 27, 2024.  To preserve her right to object to procedural defects in removal, Barnett was required to file her motion to remand within thirty days.  To determine the deadline for filing a motion to remand, Federal Rule of Civil Procedure 6 provides the method for computing time.  Rule 6 states that the day of the event triggering the time period—in this case, June 27—is not counted.  FED. R. CIV. P. 6(a)(1)(A).  The counting begins on the following day, June 28.  Rule 6 further provides that when a period is stated in days, "count every day, including intermediate Saturdays, Sundays, and legal holidays."  FED. R. CIV. P. 6(a)(1)(B).  Based on this computation, the thirtieth day fell on Saturday, July 27, 2024.

When, as here, the final day of a period falls on a Saturday, Sunday, or legal holiday, the period runs until the end of the next day that is not a Saturday, Sunday, or legal holiday.  FED. R. CIV. P. 6(a)(1)(C).  Here, the next day that was not a Saturday, Sunday, or legal holiday was

Monday, July 29, 2024.  Therefore, Barnett was required to file her motion to remand by July 29, 2024.  However, she filed the motion on July 30, 2024, one day late.  As a result, Barnett waived her right to object to any procedural defects in the removal.

Accordingly, IT IS RECOMMENDED that the Motion to Remand be DENIED.

### III.    Timeliness of Removal

The undersigned finds that Barnett waived her right to challenge the timeliness of removal, as it constitutes a removal defect.  However, even assuming arguendo that Barnett timely filed her motion to remand, Defendants' removal was timely in this case.

Under the removal statute, a defendant must file a notice of removal:  1) within thirty days after the defendant receives, through service or otherwise, a copy of the initial pleading setting forth the claim for relief, or the summons, whichever period is shorter; or 2) if the case "stated by the initial pleading is not removable," within thirty days after defendant's receipt, "through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."  28 U.S.C. § 1446(b)(1) & (3).[1]

To trigger § 1446(b)'s first thirty-day removal period, the initial pleading must "affirmatively reveal[] on its face that the plaintiff is seeking damages in excess of the minimum jurisdictional amount of the federal court."  *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 163 (5th Cir. 1992); *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 400 (5th Cir. 2013).  If a plaintiff wants

---

[1] Other than dividing the thirty-day removal periods into separately numbered paragraphs, the remaining changes brought by the Judicial and Venue Clarification Act ("JVCA") do not undermine the Fifth Circuit decisions regarding the thirty-day removal periods.  *See* discussion, *infra*.

the thirty-day period to run from the defendant's receipt of the initial pleading, a plaintiff should place in that pleading "a specific allegation that damages are in excess of the federal jurisdictional amount." *Chapman*, 969 F.2d at 163. [2]

Barnett contends that Walmart should have removed the case within thirty days of her initial pleading. (M/Remand [doc. #10. p. 2]). However, Barnett's Petition does not satisfy *Chapman*'s bright-line rule because it lacks a specific allegation that damages exceed the federal jurisdictional threshold. Thus, the initial thirty-day removal window was not triggered.

The Fifth Circuit endeavored to establish another "bright-line" rule for purposes of § 1446(b)'s second thirty-day removal period. *Bosky v. Kroger Texas, LP*, 288 F.3d 208, 211 (5th Cir. 2002). The court explained that

> the information supporting removal in a copy of an amended pleading, motion, order or other paper must be "unequivocally clear and certain" to start the time limit running for a notice of removal under the second paragraph of section 1446(b).[3] This clearer threshold promotes judicial economy. It should reduce "protective" removals by defendants faced with an equivocal record. It should also discourage removals before their factual basis can be proven by a preponderance of the evidence through a simple and short statement of the facts. In short, a bright-line rule should create a fairer environment for plaintiffs and defendants.
>
> *Id.*

---

[2] As the Fifth Circuit explained,

> [t]he *Chapman* court had several practical ramifications in mind when it announced this standard. By rejecting a so-called due-diligence standard, it sought to promote efficiency by preventing courts from expending copious time determining what a defendant should have known or have been able to ascertain at the time of the initial pleading. Moreover, the *Chapman* court wanted to avoid encouraging defendants to remove cases prematurely for fear of accidentally letting the thirty-day window to federal court close when it is unclear that the initial pleading satisfies the amount in controversy.

*Mumfrey,* 719 F.3d at 399 (internal citations omitted).

[3] Now § 1446(b)(3).

This begs the question what must be included in an "other paper" to make it "unequivocally clear and certain" that the amount in controversy exceeds the jurisdictional threshold?

Despite some confusion,[4] *Bosky* provided the lower courts with some guidance.  The court cited Fifth Circuit cases, such as *S.W.S. Erectors, Inc. v. Infax, Inc.*, and *Wilson v. Belin*, that it deemed consistent with its "unequivocally clear and certain" standard.  *Bosky,* 288 F.3d at 212 (citing *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 491-92 (5th Cir. 1996); *Wilson v. Belin*, 20 F.3d 644, 651 n.8 (5th Cir. 1994)).  In both *S.W.S. Erectors* and *Wilson*, the removals were premised upon written evidence obtained from plaintiffs which acknowledged *specific damage figures that exceeded the federal jurisdictional minimum.  Id*.

In addition, *Bosky* relied on the different meanings attributable to "setting forth" and "ascertained" – the two terms used to describe the information needed to trigger the first and second thirty-day removal windows – to infer that the requisite trigger for the second removal period necessarily is stiffer than *Chapman*'s bright-line rule for the initial removal period.  *Bosky,* 288 F.3d at 211.

While it is difficult to conceive of a more demanding requirement than that set forth in *Chapman*, i.e., a specific allegation that damages exceed the federal jurisdictional minimum, one must recall that *Bosky* was decided under the mistaken premise that *Chapman*'s bright-line rule had been degraded by subsequent amount-in-dispute cases, which, as it turns out, are inapposite. *See Mumfrey,* 719 F.3d at 400.  Consequently, *Bosky* should be read as imposing a trigger for the second removal period that is *at least* as strict as that set forth in *Chapman*.[5]

---

[4] *See Mumfrey*, 719 F.3d at 400.

[5] An unintended consequence of *Bosky* is that a defendant may be able to establish by a preponderance of the evidence that the amount in controversy exceeds the requisite jurisdictional minimum, even though the pleadings and "other papers" do not suffice to trigger the § 1446(b)

Consistent with this interpretation, the "other paper[s]" that the *Bosky* defendants relied on to support removal were documents that revealed actual medical expenses in excess of $75,000. *Bosky v. Kroger*, Appellee Brief, 2001 WL 34127780. Even more telling is that more than thirty days before removal, the defendants obtained discovery from the plaintiff stating that the plaintiff would "not seek more than $500,000.00 for all of her damages and may seek less than this amount . . . " plus a written statement that the plaintiff's medical damages were around $50,000. *Id.* By finding removal timely, *Bosky* effectively held that the foregoing evidence was insufficient to commence the thirty-day removal period. Rather, the thirty-day removal clock was not triggered until defendant obtained written proof of actual damages that exceeded the jurisdictional minimum.

Defendants assert that Barnett's initial responses to interrogatories and requests for production of documents in February 2024 indicated only approximately $9,207 in medical expenses. (Opp. to M/Remand [doc. #12, p. 7]). Barnett herself acknowledged in her motion that no statement from those responses suggested damages exceeding $75,000. (M/Remand [doc. #10, p. 1]). Defendants contend that they could not ascertain the case's removability until June 24, 2024, when they received Barnett's deposition transcript and additional medical records. (Opp. to M/Remand [doc. #12, p. 8]). The Fifth Circuit has confirmed that a deposition transcript qualifies as an "other paper" for removal purposes. *Morgan v. Huntington Ingalls, Inc.*, 879 F.3d 602, 607-608 (5th Cir. 2018).

The deposition transcript indicates that Barnett intends to undergo ankle surgery. *See*

---

removal window(s). *See Mumfrey*, 719 F.3d at 400, n.13; *Biggs v. Cajun Operating Co.*, No. 3:10-CV-01847, 2011 WL 196096, at *3 (N.D. Tex. Jan. 19, 2011) (noting the incongruity between the standard to satisfy amount in controversy and the standard to trigger mandatory removal).

(Deposition Transcript [doc. #12-3]).  The medical receipts and records received on June 24, 2024, along with the deposition transcript, revealed that Barnett had already incurred $25,000 in medical expenses and would face additional costs for ankle surgery and further treatment for her lower back.  (Notice of Removal [doc. #1, pp. 5-6]).  However, the undersigned finds that the deposition transcript, medical records, and receipt do not unequivocally establish that the amount in controversy exceeds $75,000.

Defendants rely on several cases to argue that the "other papers" made it unequivocally clear that the second thirty-day removal period was triggered.  (Opp. to M/Remand [doc. #12, pp. 16-17]).  However, these cases are distinguishable from the matter at hand.  In *Chambers v. Bielss*, the court found that the plaintiff's first amended petition expressly claimed damages exceeding $75,000, allowing the defendant to ascertain removability.  No. CIV.A.3:08CV372KC, 2008 WL 5683483, at *5 (W.D. Tex. Dec. 8, 2008).  Similarly, in *Hinojosa v. Chowning*, a settlement demand letter triggered the second removal period because the plaintiff explicitly demanded one million in damages.  No. CIV.A. L-10-79, 2010 WL 4065487, at *4 (S.D. Tex. Oct. 12, 2010).  By contrast, the present case does not include a clear statement indicating that Barnett's claims exceed $75,000; the specific damages alleged amount to no more than $25,000.  Furthermore, Defendants cited *Jones v. Chavez* where the court held that the one-year removal deadline did not apply because the plaintiff engaged in forum manipulation.  No. CIV.A. 11-2039, 2012 WL 441251, at *2-3 (E.D. La. Feb. 10, 2012).  Here, however, neither the one-year limitation nor forum manipulation is at issue.

Although the medical records and receipts show that Barnett has incurred $25,000 in medical expenses, this amount falls short of exceeding $75,000.  In time limit dispute cases, *Mumfrey* explicitly rejected the principle from *Bosky* that "'specific damage estimates that are less

12

than the minimum jurisdictional amount, when combined with other unspecified damage claims, can provide sufficient notice that an action is removable . . .'" *Mumfrey*, 719 F.3d at 400 (quoting *Bosky*, 288 F.3d at 210). Here, the specific damage estimate is $25,000, which is below the minimum jurisdictional amount. Defendants cannot combine this figure with speculative costs for Barnett's potential ankle surgery or potential damages for mental anguish or inconvenience. The Fifth Circuit created this bright-line rule to avoid Defendants from having to make such assumptions and from having to combine unspecified, speculative damage claims. Therefore, the Court finds that the deposition transcript and medical records were not unequivocally clear and certain to trigger the second thirty-day removal period.

However, the "unequivocally clear and certain" standard is applied when a court is determining whether a defendant has timely removed, not whether removal was permissive. Stated differently, the § 1446(b)(3) thirty-day clock acts as a ceiling or limit on removal, not as a jurisdictional floor. If, before the thirty-day clock starts, a defendant can demonstrate by a preponderance of the evidence that the jurisdictional threshold is met, he or she may remove without being required to "unlock" the thirty-day window by presenting "unequivocally clear and certain" evidence. *See Mumfrey*, 719 F.3d at 400, n.13 (even if defendant *could* have removed the suit, the allegations did not start the clock such that defendant was *required* to remove).

As outlined above, Defendants have established by a preponderance of the evidence that the amount in controversy is met. Additionally, the Court has determined that complete diversity of citizenship exists. Therefore, although the second thirty-day removal period was not triggered, Defendants were permitted to remove the case by establishing that subject matter jurisdiction exists.

Accordingly, even if Barnett had timely filed her motion to remand, Defendants properly

and timely removed this case, and thus, it would be recommended that the Motion to Remand be DENIED on that basis.

## Conclusion

For the above-stated reasons,

IT IS RECOMMENDED that the Motion to Remand [doc. #10] filed by Plaintiff Shirley Barnett be DENIED.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM**

**ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 25th day of November, 2024.

_____
KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE

15